Evelynn FOSTER, Personal Rep-
resentative of the Estate of
Ann Davis, Appellant,

v.

PROFESSIONAL GUARDIAN
SERVICES CORPORATION,
Appellee.

No. S–13569.

Supreme Court of Alaska.

Aug. 19, 2011.

**104**

Mary A. Gilson and Allison E. Mendel, Mendel & Associates, Anchorage, for Appellant.

No appearance by Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and CHRISTEN, Justices.

*OPINION*

CARPENETI, Chief Justice.

## I. INTRODUCTION

In 2002, the superior court appointed a professional conservator for a mother suffering from dementia. Her daughter, who also served as special advocate, resisted the appointment. From 2002 onward, the daughter engaged in wide-ranging legal challenges to the conservator's handling of her mother's conservatorship. In response, the conservator incurred large legal fees, paid by the estate, in defending its actions. After the mother's death, the superior court approved the conservator's final accounting. The court recognized flaws in the conservator's management of the mother's property, including a breach of fiduciary duty. But based on a prevailing party analysis the court approved reimbursement, from the mother's property, for the full attorney's fees the conservator expended in defending itself. Because we conclude that certain of the superior court's factual findings may be inconsistent, we remand for the superior court to clarify its findings or make them consistent. And because it was error to evaluate attorney's fees under the prevailing party standard, we remand for reconsideration of attorney's fees.

In all other respects we affirm the decision of the superior court.

## II. FACTS AND PROCEEDINGS

### A. Facts

Ann Davis was 89 years old in August 2002 when the superior court appointed Professional Guardian Services Corporation (PGSC) as her temporary conservator and guardian. The superior court appointed PGSC permanent guardian and conservator in February 2003.

Davis's daughter Evelynn Foster and son William Bryant were both appointed by the court as special advocates for Davis. They are estranged from each other and disagreed over Davis's care and the management of her property. In particular, Foster contested the appointment of PGSC, while Bryant supported it. This appeal stems from Foster's broad litigation against PGSC.

At some point before PGSC became involved, Foster was Davis's guardian. At that time, Foster had the opportunity to go through Davis's home and take items of personal property that she wished to keep. She inventoried the possessions she took. Once PGSC became guardian, Foster again went through the home and was allowed to take additional items as she wished.

Within 90 days of its appointment, PGSC was required to complete a report outlining its plan of care and inventorying Davis's property. In the report it completed, PGSC noted that it moved Davis to an assisted living facility where she was settling in well. The report contained the required inventory section, where PGSC noted two vehicles, but did not further inventory Davis's personal property. PGSC reported Davis's monthly income to be about $2,000, based largely on a pension and government benefits. Davis's assets totaled approximately $168,000, and consisted of the vehicles, liquid assets of about $65,700, a home appraised at $95,000, and a few minor assets (furniture and money on deposit) at the assisted living facility. Davis's monthly expenses at the assisted living center were roughly $6,700, much higher than her $2,000 monthly income. In February 2003 PGSC estimated that Davis's liquid

assets would be depleted in approximately a year. The sale of Davis's house would fund her care for roughly two and a half years.

In part due to legal fees, Davis's liquid assets were rapidly depleted, and by May 2003 PGSC had determined it needed to sell Davis's house. That month, PGSC President David Schade wrote to several attorneys on the case, including Foster's attorney Allison Mendel, informing them of the need to sell the house. The letter stated that Davis's granddaughter Sandra Foster (Sandra)—who otherwise would inherit the house—had asked for a first right to purchase the home, and that she could do so at fair market value if she confirmed her intent by June 7 and closed by July 15. A June 2003 letter from Schade to Mendel provided further details of the offer. Ultimately, Sandra did not purchase the house, and PGSC sold it instead to a third party. PGSC placed some of Davis's remaining household items in storage.

Approximately 13 months before Davis's death, the federal government erroneously concluded that she had passed away and stopped paying her pension. PGSC did not timely rectify the error. The missed payments were not paid until after Davis's death, at which time the funds were split evenly between Bryant and Foster, the beneficiaries listed on Davis's pension form.

Davis passed away in November 2004. PGSC's final accounting for its conservatorship expenses is the subject of the present appeal.

## B. Proceedings

### 1. Judge Reese's rulings concerning PGSC's conservatorship

After Superior Court Judge John Reese appointed PGSC as guardian over Foster's objections, Foster filed a petition to remove PGSC for cause. The court held a hearing in February 2004 and denied Foster's request, finding PGSC to have "acted appropriately, reasonably, and in the best interests of Ann Davis in all aspects of its service as guardian and personal representative." Judge Reese's order from the bench was severely critical of Foster, accusing her of "selfish manipulations" and "hypocrisy," and referring to her "mixed motives and contentious personality."

Judge Reese ruled against Foster on every issue, stating: "Ms. Foster's personality is the reason PGSC was appointed in the first place. PGSC's job is not to confront Ms. Foster but to help Ann Davis." Discussing a problem with the insurance on Davis's house, the court held Foster partly responsible, stating that she "interfered in PGSC's work." The court also suggested that Foster's interference was "a transparent attempt to get the house to her daughter through inheritance rather than purchase or rent and was contrary to the current need of Ann Davis to benefit from her own asset."

Because Davis passed away in November 2004, a few months after Judge Reese's written order, Foster's appeal from that order to this court was dismissed as moot. But we granted Foster the right to preserve the issues she raised for the anticipated conservatorship proceedings regarding PGSC's accounting.

### 2. Judge Suddock's hearing and initial ruling from the bench

PGSC petitioned for approval of its final accounting, and the case came before Superior Court Judge John Suddock, who conducted a two-day evidentiary hearing in February 2008.

At the close of the hearing, Judge Suddock ruled from the bench, extensively addressing each of Foster's points. Regarding PGSC's inventory, which listed only two cars and not Davis's smaller items, the court stated that it would have been prudent for PGSC to create a better inventory, and that such an inventory was "normally and appropriately done by conservators." But there was no harm, because the court found that Foster had taken the items important to her while going through the house. The court also indicated that PGSC had a good reason not to inventory: PGSC's reasonable belief that Foster "had gotten what she thought was important to keep."

Regarding PGSC's use of paid storage for Davis's household items, the court held storage to be a reasonable expense during Davis's life, particularly in light of the contentious situation in the family. But the

court found it unreasonable to pay for storage once Foster had been appointed personal representative, after Davis's death. The cost of unnecessary storage may have been up to $500.

Regarding PGSC's failure to quickly correct the federal government's cessation of Davis's pension payments, the court postponed decision on the matter to see if PGSC could still obtain the funds or if the parties could work out an agreement.

Regarding the sale of the house to a third party, and not to Sandra, the court found PGSC's actions not to be a breach of PGSC's fiduciary duty. Specifically, the court indicated it was reasonable for PGSC to assume that its letter to Mendel, containing a written offer, would be communicated to Sandra. The court also noted that past transactions with Sandra had failed, and that it would have been reasonable for PGSC to conclude that Sandra was not a serious business partner.

Regarding attorney's fees, the court found that it was reasonable for PGSC to retain counsel to defend its actions. In addition, although Foster prevailed on a few issues, the court indicated those were rather insignificant and that "[PGSC] has overwhelmingly prevailed on the global attack on [its] handling of the matter."

### 3. Judge Suddock's second ruling from the bench, concerning pension payments

A week after the first ruling from the bench, the court convened to address the pension issue, which it had given the parties additional time to negotiate. The court held that PGSC's failure to timely address the pension checks "did not comport with [its] high duty of care" as a fiduciary. But before issuing a ruling against PGSC, the court requested that PGSC attempt to correct the problem. Foster subsequently received half ($6,323.91) of the errant pension benefits but failed to notify PGSC of her receipt of the benefits.

### 4. Judge Suddock's final written decision

PGSC eventually filed a renewed motion for closure, which Foster opposed in part. On June 1, 2009, the court issued its written decision, from which Foster has taken this appeal. The court found Foster's receipt of the pension funds to be in bad faith, and to have caused unnecessary cost to PGSC. Because Foster kept the funds instead of depositing them into the estate,[1] the court held that she had breached her fiduciary duty to the estate.

In determining damages from the receipt of the pension funds, the court looked to what would have happened with the funds had they been collected by the conservatorship and passed to probate. The court determined that improper disbursement to Foster had led to damages of only $1,323.91. The court did not alter its earlier conclusion that PGSC was the prevailing party in the litigation. Because Foster still owed the estate unpaid damages and attorney's fees from her litigation before Judge Reese, the court tallied the amounts Foster and PGSC each owed and offset them, with the result that Foster owed the estate $1,448. The court found the reimbursement by the estate of all of PGSC's attorney's fees reasonable, and noted that the conservatorship account would be exhausted after these payments.

Foster now appeals several of Judge Suddock's rulings. Specifically, she claims that PGSC breached its fiduciary duty by failing to inventory Davis's belongings, by paying storage fees for Davis's belongings, and by not selling the house to Sandra; that the superior court should not have applied probate law to the pension dispute; and that PGSC should not receive attorney's fees if it breached its fiduciary duty.

### III. STANDARD OF REVIEW

██ We review the superior court's factual findings for clear error, reversing only if we have a definite and firm conviction that based on the record as a whole a mistake has been made.[2]

---

1. The superior court referred variously to "the estate" and "the conservatorship account."

2. *Nerox Power Sys., Inc. v. M–B Contracting Co.*, 54 P.3d 791, 794 (Alaska 2002).

■ "Questions regarding the interpretation and application of a statute are questions of law to which we apply our independent judgment."[3]

■ To the extent that Foster contests the reasonableness of attorney's fees, and not the interpretation of an attorney's fees statute, we review for abuse of discretion, reversing only if the award is "manifestly unreasonable."[4]

## IV. DISCUSSION

Foster raises five issues on appeal.

The first four concern PGSC's performance as conservator. In general, Foster argues that the superior court erred by being excessively lenient in its evaluations of PGSC's performance and by refusing to recognize the damages to Davis's estate caused by PGSC's performance. Specifically, Foster argues that PGSC breached its duty to Davis by (1) failing to conduct an adequate inventory of Davis's property, (2) paying for storage of Davis's property when free storage was available, (3) failing to correct in a timely manner the misrouting of Davis's pension payments, and (4) violating Davis's wishes regarding the offering of her house to her granddaughter.

The practical significance of Foster's complaints regarding PGSC's performance lies in Foster's fifth issue on appeal, the superior court's approval of the reimbursement of PGSC's attorney's fees. Foster recognizes that a conservator is entitled to "reasonable" attorney's fees under AS 13.26.230. But she asserts that the superior court erred in allowing PGSC to reimburse itself from Davis's estate for attorney's fees accrued in defense of PGSC's mismanagement of the conservatorship. PGSC breached its duty to Davis, Foster argues, and "fees incurred by a conservator in an unsuccessful defense of a breach cannot be said to be reasonable." Thus Foster seeks to reverse the superior court's decision regarding the reimbursement of PGSC's attorney's fees.

We address the first two issues in tandem, and the remaining three issues individually. Regarding the first two issues—the cursory inventory and the use of paid storage—we conclude that two factual findings—(1) that the failure to sufficiently inventory was harmless because there was nothing of value in Davis's house, and (2) that the use of paid storage was reasonable because there were valuable items in Davis's house—may be inconsistent with each other. We thus remand for resolution of the apparent inconsistency in the superior court's factual findings. With regard to the third and fourth issues—the pension funds and the house sale—we affirm the superior court's conclusions. With regard to the fifth issue—attorney's fees—we hold as a matter of first impression that AS 13.26.230 invites an analysis that is distinct from the "prevailing party" analysis of attorney's fees under Alaska Civil Rule 82. We remand to the superior court for a new calculation of PGSC's reimbursable attorney's fees in light of (1) the need to revisit the factual findings, and (2) our clarified standard for the reimbursement of conservator attorney's fees under AS 13.26.230.

### A. The Superior Court's Factual Findings Regarding The Value Of Davis's Property Appear Inconsistent And Require Clarification.

■ We first discuss the superior court's findings regarding inventory and storage. In light of the apparent inconsistency in the findings, we remand for clarification.

### 1. The superior court correctly concluded that PGSC's inventory did not satisfy the requirements of AS 13.26.250.

■ Foster first claims PGSC's cursory inventory breached AS 13.26.250. Though Foster cited to AS 13.26.250, the superior court did not explicitly interpret the statute, which requires a conservator to complete an inventory of the ward's property within 90 days of the conservator's appointment. PGSC's initial inventory listed two vehicles

---

**3.** *Mat–Su Valley Med. Ctr., LLC v. Advanced Pain Ctrs. of Alaska, Inc.,* 218 P.3d 698, 700 (Alaska 2009) (citing *State v. Jeffery,* 170 P.3d 226, 229 (Alaska 2007)).

**4.** *DeNardo v. Cutler,* 167 P.3d 674, 677–78 (Alaska 2007) (quoting *Marron v. Stromstad,* 123 P.3d 992, 998 (Alaska 2005)) (internal quotation marks omitted).

and made the following statement: "PGSC's staff have not completed the personal property inventory, but found no significant personal property during our initial review." PGSC's CEO testified that he did not individually list the small items of personal property—those less than $400 in value—because it would not have been a cost-effective use of the guardian's funds to pay an appraiser to do so. Although PGSC did not respond to this appeal, it appears that PGSC claimed in the superior court that National Guardianship Association Standards require an inventory only of items valued over $400—a contention disputed by Foster.

PGSC's decision not to list anything under $400 is not supported by any language in AS 13.26.250. In fact, PGSC's own inventory form suggests listing any item over $200. As the superior court persuasively suggests, PGSC could have cost-effectively inventoried the property by video or by listing contents by genre ("cooking ware," "flatware," and so on). We thus affirm the superior court's conclusion that PGSC's cursory personal property inventory, which listed only two vehicles, was not sufficient to satisfy the standards of AS 13.26.250. But this does not settle the issue of whether the inventory caused harm to Davis's estate.

## 2. Viewed in isolation, there may be sufficient evidence to conclude that PGSC's cursory inventory was harmless.

Foster claims that PGSC's failure to inventory harmed the estate because it is now uncertain whether a fur coat, bible, or other unspecified sentimental items were lost during PGSC's control of the property.[5] The superior court found that the evidence does not support a conclusion that PGSC lost those items. Among other possibilities, the court noted that Davis could have lost or given away the items before PGSC took control.

Viewed in isolation, the superior court's finding is adequately supported. The court noted that Foster had been through the house before PGSC's involvement, and again after PGSC took over, and that Foster could—and did—take any items she wanted. The court found it was reasonable for PGSC to conclude that Foster "had gotten what she thought was important to keep." Further, based on this finding, the court found it likely that the items in question were not present in the home when PGSC took over. Foster's appeal disputes none of these assertions.

Thus the record contains support for the court's findings that Foster had not demonstrated PGSC was responsible for the loss of any items, and that the items in question may have been gone before PGSC took over. Based on these findings, the court's conclusion that PGSC's inadequate inventory caused no damage to the estate, standing alone, might not have been clearly erroneous. The problem with the court's finding lies in its relation to the court's findings on the issue of storage, as described below.

## 3. Viewed in isolation, there may be sufficient evidence to conclude that PGSC's use of paid storage was reasonable.

Asserting that free storage was available at her own house, Foster claims it was unrea-

---

**5.** Foster presents PGSC's failure to inventory as a breach of fiduciary duty. But "[w]here a point is not given more than a cursory statement in the argument portion of a brief, the point will not be considered on appeal." *Petersen v. Mutual Life Ins. Co. of N.Y.*, 803 P.2d 406, 410 (Alaska 1990). In making her argument, Foster has not cited any legal authority on the nature of a conservator's fiduciary duty, nor any legal authority suggesting what would constitute a breach of such a duty. Rather, Foster simply asserts that PGSC owed the "highest duty of diligence and care" to Davis, and that PGSC breached that duty.

Other states have addressed the issue of the fiduciary duty of conservators. California, for example, requires both good faith and objective reasonableness in the conservator context, and has held that "as a fiduciary, a conservator is bound to act with reasonable prudence and pursuant to a good-faith belief that its actions will tend to accomplish the purpose of its trust by benefiting the conservatee." *Conservatorship of Lefkowitz*, 50 Cal.App.4th 1310, 58 Cal.Rptr.2d 299, 301 (1996). More leniently, Illinois requires guardians to use the same prudence with the protected person's property as the guardian would with his or her own property. *Parsons v. Wambaugh's Estate*, 110 Ill.App.3d 374, 66 Ill. Dec. 145, 442 N.E.2d 571, 573 (1982). But we decline to reach the issue as a matter of first impression in Alaska on the basis of the cursory briefing before us. We consider the present case in terms of PGSC's alleged harm to Davis's estate rather than in terms of PGSC's alleged breach of fiduciary duty.

sonable for PGSC to pay storage fees for Davis's items. Foster claims PGSC's use of paid storage created unnecessary expense and breached PGSC's fiduciary duties.

The superior court found storage reasonable, writing that "given family contention, it was appropriate to store these items at a neutral locale." Foster does not dispute the superior court's assertions regarding contentiousness in the family or the litigiousness of the situation. It appears that the strife between Foster and Bryant was so strong that staff at Davis's assisted living facility had to intervene between them a number of times, and considered evicting Davis due to the strife between her children. Viewed in isolation, there would thus be adequate support in the record for the superior court's finding that PGSC's use of paid storage was reasonable.

**4. But viewed together, the superior court's factual findings regarding inventory and storage appear inconsistent.**

■ We will not disturb the factual findings of a trial court unless they are clearly erroneous. One sign of such error is an inconsistency between two factual findings— even if each one, standing alone, would be sufficiently supported by the record so as not to constitute clear error.[6] In this case, the trial court found both that PGSC "could reasonably conclude ... that [Foster] had gotten what she thought was important to keep," and that PGSC "reasonably believed that Ms. Foster wanted some of that stuff and that, therefore, it was necessary to retain it." The first finding supports the superior court's conclusion that PGSC's statutorily inadequate inventory did not result in damages to Davis's estate. The second find-

ing supports the court's conclusion that PGSC's use of paid storage did not breach its duty to Davis.

But it may not have been reasonable for PGSC to have believed that there was nothing in the house of value to Foster while placing the items in costly storage because of their high value. PGSC cannot be allowed to present its failure to inventory as harmless by asserting there was nothing valuable in the house and then, in the next breath, defend its use of a costly storage facility by asserting that the valuable items in the house required preservation. On remand, the superior court must clarify or otherwise resolve this apparent inconsistency.

**B. The Superior Court Did Not Err In Determining Damages Related To The Missed Pension Payments.**

■ Because the federal government thought Davis passed away before she actually did, 13 monthly pension payments totaling $12,647.82 were not sent to Davis's conservatorship, and instead were later paid out directly to Foster and Bryant, the beneficiaries of Davis's pension plan. The superior court found PGSC responsible for not correcting the issue in a timely manner, resulting in the payment of $6,323.91 each to Foster and Bryant instead of to the conservatorship. Foster and Bryant would not agree to return the money to the conservatorship, but the court found little harm on the theory that in the probate proceedings AS 13.12.403 would have split $10,000 of the funds between them in any event, as the decedent's children, because the personal property remaining in the estate was "essentially worthless" and because there were no other assets at the end of the conservatorship subject to probate ad-

---

**6.** *Cf. Anderson v. City of Bessemer City,* 470 U.S. 564, 575–76, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (suggesting that internal inconsistency between factual findings can establish clear error (citing *United States v. Aluminum Co. of Am.,* 148 F.2d 416, 433 (2d Cir.1945); *Orvis v. Higgins,* 180 F.2d 537, 539–40 (2d Cir.1950))); *accord Al-Babtain v. Banoub,* 410 Fed.Appx. 179, 183 (11th Cir.2010). We routinely review factual findings for consistency and have rejected findings that were internally inconsistent. *See, e.g., Tara U. v. State, Dep't of Health & Soc. Servs., Office of*

*Children's Servs.,* 239 P.3d 701, 705 (Alaska 2010) (vacating order based on "unexplained apparent inconsistencies" that prevented effective appellate review of factual findings); *Fletcher v. Trademark Constr., Inc.,* 80 P.3d 725, 732 (Alaska 2003) (upholding factual findings after concluding in part that they were not "internally contradictory"); *Silvers v. Silvers,* 999 P.2d 786, 791 (Alaska 2000) (ordering reconsideration on remand of factual issue where trial court's ruling was "self-contradictory").

ministration.[7] Thus only $2,647.82 was misallocated to Foster and Bryant, or $1,323.91 each. Because the court had jurisdiction over Foster, the court ordered Foster to return her extra $1,323.91 to the estate, which left only Bryant's extra $1,323.91 as damages from PGSC's failure to respond in a timely manner. Thus, the superior court correctly concluded that the missed pension payments caused $1,323.91, and not $12,647.82, in damage to the estate.

Foster also argues that the superior court erred in applying AS 13.12.403—because it is a probate law and therefore part of a separate statutory scheme that is not applicable to a conservatorship case—and in requiring Foster to relinquish her overpayment. But Foster failed to raise these arguments before the superior court, and they are therefore waived.[8]

### C. The Superior Court Did Not Err In Concluding That PGSC Did Not Breach Any Duty In The Way It Sold Davis's House.

Davis's will stated that, after her death, her house should go to Foster's daughter Sandra. But because Davis's liquid assets were exhausted and PGSC needed to pay for Davis's care, PGSC decided to sell Davis's house while Davis was living. PGSC had a market analysis done on the house, and in letters dated May and June 2003 PGSC offered the house to Sandra for $135,500—the $138,000 market analysis value minus the cost of roof repairs. PGSC sent the letters to Foster's lawyer, Allison Mendel. Because Sandra did not come forward to buy the house, PGSC sold it to a third party.

Foster claims Davis's house should have been sold to Sandra, not to a third party via a real estate broker. The alleged damages include real estate brokerage fees and the fees paid to PGSC for the time it spent conducting the sale. Specifically, Foster claims that AS 13.26.295 required PGSC to adhere to Davis's estate plan, and that PGSC was therefore bound to sell Davis's house to Sandra, who would have inherited the home had it gone through probate.

We conclude that AS 13.26.295 did not require selling the house to Sandra. Our case law does not squarely address the legal issue of what duty is imposed by section .295, and Foster briefs this question only in cursory fashion. Section .295 requires conservators to take the protected person's estate plan into account when "investing the estate," "selecting assets of the estate for distribution under AS 13.26.285(a) and (b)," and in certain other circumstances. Section .285(a) gives conservators the ability to distribute income or principal from an estate in order to care for the protected person. Section .285(b) allows the conservator to make distributions to charity as the protected person would have.

Given the depletion of Davis's assets, a conflict arose between Davis's welfare and her stated intention to leave her house to her granddaughter. One reasonable way to resolve the conflict was to offer the house to Sandra for sale. The superior court specifically found that PGSC went to adequate lengths to offer the house to Sandra, even though PGSC addressed the letters containing the offer to Foster's attorney rather than directly to Sandra. The superior court found that it was "reasonable . . . to group mother and daughter together," and that communication with an attorney constitutes communication with the party.

Foster admits that PGSC made an offer to Sandra through Foster's attorney. Because Foster did not appeal the superior court's

---

7. AS 13.12.403 provides that

the decedent's surviving spouse is entitled from the estate to a value, not exceeding $10,000 in excess of security interests in the items, in household furniture, automobiles, furnishings, appliances, and personal effects. If there is no surviving spouse, the decedent's children are entitled jointly to the same value. If encumbered chattels are selected and the value in excess of security interests, plus that of other exempt property, is less than $10,000, or if

there is not $10,000 worth of exempt property in the estate, the spouse or children are entitled to other assets of the estate, if any, to the extent necessary to make up the $10,000 value.

8. *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001) ("A party may not raise an issue for the first time on appeal."). Although the record shows PGSC raised AS 13.12.403, Foster did not contest the statute's applicability.

finding that it was reasonable that PGSC treated Foster and Sandra as a single party, represented by Foster's attorney, we affirm the superior court's conclusion that PGSC fulfilled any obligation to Sandra.

In addition, the superior court did not err in finding PGSC's decision not to have the house appraised reasonable. Although PGSC may not have appraised the house, a market analysis was performed on the property, and Foster admits that the house sold at that price, which was well above earlier estimates. Foster has not indicated why an appraisal would have been required, how the market assessment was insufficient, or that the home could have sold for more.

Foster also asserts that the superior court erred in finding that Sandra was not interested in the house. But the superior court made no such finding. Rather, Judge Suddock noted that Judge Reese—who had heard more testimony—found that Sandra did not express interest in the property. But Judge Suddock explicitly declined to give preclusive effect to that finding. Accordingly, there is no error because the court did not find Sandra uninterested, and declined to rely on an earlier court's finding to that effect.

In conclusion, we affirm the superior court's ruling that PGSC's sale of Davis's home was reasonably conducted.

### D. It Was Error To Evaluate PGSC's Attorney's Fees Under Civil Rule 82's "Prevailing Party" Standard.

 A prevailing party before Alaska trial courts may receive attorney's fees from the opposing party under Alaska Civil Rule 82. In such a case, we give the trial court

wide discretion.[9] To determine whether a party was a prevailing party, the court looks generally to whether the party was successful on the main issue of the action, whether the party successfully defended the action, and whether judgment was entered in favor of the party.[10]

PGSC instead received a reimbursement of its attorney's fees from Davis's estate through AS 13.26.230, which provides that "[i]f not otherwise compensated for services rendered, any ... lawyer ... [or] conservator ... is entitled to reasonable compensation from the estate." The superior court apparently approached AS 13.26.230 by conducting a Rule 82–like "prevailing party" analysis, where the conservator can lose on a number of issues and still collect full fees.[11]

Foster disputes the superior court's analysis, arguing that compensation is not "reasonable" under AS 13.26.230 if it stems from unsuccessfully defending a breach of fiduciary duty. This is a question of first impression. We have only once previously addressed AS 13.26.230, holding that conservatorship funds should normally be used for attorney's fees incurred by the conservator.[12] But that case did not involve a conservator breaching its fiduciary duty or otherwise doing anything wrong.[13]

 The policies underlying Rule 82 and AS 13.26.230 are very different. "Rule 82's primary purpose is to partially compensate a prevailing party for attorney's fees incurred in enforcing or defending the party's rights.... Without the rule, the rights of the prevailing party would be less completely vindicated because of the uncompensated expense of litigation."[14] By contrast, AS 13.26.230 is a part of Alaska's statutory

**9.** See Marron, 123 P.3d at 998 (citing Cizek v. Concerned Citizens of Eagle River Valley, Inc., 71 P.3d 845, 848 (Alaska 2003)). Where fees have been awarded under a statute, this court has looked to whether the superior court's findings were sufficient to meet the terms of the statute. Jones v. Jones, 925 P.2d 1339, 1343 (Alaska 1996).

**10.** Wooten v. Hinton, 202 P.3d 1148, 1152 (Alaska 2009) (citing Alaska Ctr. for the Env't v. State, 940 P.2d 916, 921 (Alaska 1997)).

**11.** The superior court did not explicitly cite to AS 13.26.230 in its opinion, though it did refer to

"reasonable" fees. Nevertheless, the superior court's language in its ruling from the bench makes clear that it was correctly relying upon the "reasonable compensation" standard from AS 13.26.230.

**12.** In re S.H., 987 P.2d 735, 742 (Alaska 1999).

**13.** See id. at 737–38.

**14.** State v. Native Vill. of Nunapitchuk, 156 P.3d 389, 398 (Alaska 2007).

scheme for protecting the property of incapacitated persons. Under Rule 82, the interests of the prevailing party are paramount, while under AS 13.26.230, the paramount interest is protecting the incapacitated person's estate.

Rule 82 offers partial attorney's fees for wrongly sued defendants, even if they end up losing on some points. It would be unwise to provide wrongly sued conservators with exactly the same relief, given that the attorney's fees in conservatorship cases will not be coming out of the unjustified plaintiff's pocket, but out of the pocket of an innocent third party, the incapacitated person. The reimbursement of conservator attorney's fees simply does not serve to impose a cost upon a party, like Foster, for deploying a wasteful and destructive litigation strategy.

In the present case, the superior court noted that the litigation that had occurred was a "tragedy," but recognized that in light of the litigation, PGSC needed to hire an attorney in order to "preserve the estate." The superior court compared Foster's wide-ranging, often unclear litigation to the Allied invasion of Europe during World War II: "You couldn't tell where the invasion was going to be, whether it was going to be Normandy or Omaha Beach or somewhere on the other side of the peninsula, but you knew it was coming." The court tallied the small issues on which Foster prevailed, and concluded that "[PGSC] overwhelmingly prevailed on the global attack on [its] handling of the matter." The court also noted that in this case "it's impossible to divide out the component of representation that can be allotted to the bare handful of issues on which Ms. Foster here prevails." Finally, the court stated that any deduction it could take from PGSC's billing would constitute "an equitable kick in the pants" merely because PGSC's "handling of the matter was not perfect."

But in light of the purposes of AS 13.26.230, an equitable rebuke to PGSC may indeed be in order. PGSC conducted a statutorily inadequate inventory, may have caused damage to Davis's estate through this inventory and through its decision to use paid storage, and caused damage to the estate by failing to correct the misdirection of Davis's pension funds. It would be unreasonable to reimburse PGSC from Davis's estate for attorney's fees spent in defense of actions that harmed the estate in these ways. We thus remand to the superior court to deduct from PGSC's reimbursed fees those that it incurred in defending actions that caused significant harm to Davis's estate.

▬ It may be that these fees are difficult to calculate, or are quite small. But they should nevertheless be deducted based on the principle that it is unreasonable and therefore impermissible under AS 13.26.230 to require a protected person to fund a conservator's defense of actions that damaged the protected person's estate, even if that defense was undertaken in good faith.

▬ Based on the partial briefing before us, we decline to reach the more abstract issues of whether a conservator's breach of a statutory obligation must always also be a breach of fiduciary duty, and whether a conservator's defense of a breach of fiduciary duty must under every circumstance result in a loss of reimbursement for attorney's fees. It is enough in the present circumstances to conclude that under the "reasonable compensation" standard of AS 13.26.230, a conservator may not obtain from the estate reimbursement for attorney's fees spent in the unsuccessful defense of conservator actions that caused significant harm to the estate.[15]

## V. CONCLUSION

Because the superior court did not err in its treatment of the pension funds and the

---

15. Because the reimbursement of conservator attorney's fees derives from statutory authority, we will review trial courts' application of the standard laid out in this decision not for abuse of discretion, but as a mixed question of law and fact. That is, we will review for clear error the trial court's factual findings regarding the nature and extent of any harm to the conservatorship estate caused by the conservator's actions; and we will review de novo the trial court's legal conclusions regarding whether any harm was sufficiently significant as to render compensation for the defense of that harm "unreasonable" under the terms of AS 13.26.230. *See Jones v. Jones,* 925 P.2d 1339, 1343 (Alaska 1996) ("[T]he question is whether ... the superior court's findings are sufficient to support an award of attorney's fees under [the relevant statute].").

house, we AFFIRM its holdings with regard to those matters. Because the court's factual findings regarding the value of Davis's property appear inconsistent, we REMAND for clarification of those findings. We likewise REMAND for a new calculation of PGSC's reimbursable attorney's fees under AS 13.26.230.

STOWERS, Justice, not participating.