NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| In the Matter of the Estate of<br><br>WAYNE COLYER FIELDS | )<br>) Supreme Court No. S-16180<br>)<br>) Superior Court No. 4FA-91-00041 PR<br>)<br>) MEMORANDUM OPINION<br>)     AND JUDGMENT<sup>*</sup><br>)<br>) No. 1655 – November 15, 2017<br>) |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael P. McConahy, Judge.

Appearances: James M. Hackett, Law Office of James M. Hackett, Fairbanks, for Appellant Charles L. Fields, Personal Representative of the Estate of Wayne Colyer Fields. Robert A. Sparks, Law Office of Robert A. Sparks, Fairbanks, for Appellees Elizabeth Cook, Wayne Fields, and Joseph Fields.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

## I. INTRODUCTION

The personal representative of Wayne Colyer Fields's estate challenges an October 2015 superior court order providing for the closure of the estate. The order directed that certain property was to be distributed to Fields's children and that the personal representative was to receive the remainder of the estate as reimbursement for

---

    *     Entered under Alaska Appellate Rule 214.

administrative expenses. The personal representative challenges the court's determination that he was not entitled to reimbursement for appellate attorney's fees. He also argues that the court erred in failing to include in the estate inventory a piece of property held in trust for the benefit of Fields's descendants. Because the trust containing the property does not belong to the estate, this argument is without merit. And because the personal representative is already entitled to the entire remaining value of the estate, he was not prejudiced by the court's failure to award him appellate attorney's fees.

## II. FACTS AND PROCEEDINGS

This appeal is the most recent chapter of an extended effort to settle the estate of Wayne Colyer Fields. Fields executed his Last Will and Testament in 1980, making specific bequests to each of his four children, to his son-in-law, and to the Fairbanks North Star Borough Library. The will also contained a residuary clause bequeathing the remainder of Fields's estate to the Wayne Colyer Fields Trust. Fields appointed his son Charles as the estate's personal representative.

In 1987, before his death, Fields conveyed a piece of property in Washington to his four children; the property had been used by the family for recreational purposes for many years.[1] After Fields's death in 1990, the four children disputed whether the Washington property had been conveyed with the intent that they would place it in trust for Fields's descendants, and they brought the matter before the probate court.[2]

---

[1]     *In re Estate of Fields* (*Fields I*), 219 P.3d 995, 999 (Alaska 2009).

[2]     *Id.* at 999-1000.

The court determined that Fields had conveyed the Washington property to his children with the intent to create an *inter vivos* trust that was never formalized.[3] Accordingly, the court imposed a constructive trust[4] over the property: It directed Charles to establish an express trust for the management of the property, and it ordered all four children to convey their interests in the property to the trust set up by Charles.[5]

Charles's three siblings (the siblings) appealed to this court, and we upheld the superior court's decision.[6] Despite our ruling affirming the imposition of the constructive trust, the siblings refused to sign quitclaim deeds conveying their interests in the Washington property to the trust. Charles ultimately obtained clerk's deeds for the property.

---

[3]  *Id.* at 1001-02.

[4]  A constructive trust is not a trust in the ordinary sense of the word; it is an equitable remedy intended to convey property to "a claimant [who] has a better right to certain property than the person who has legal title to it." *Constructive Trust*, BLACK'S LAW DICTIONARY (10th ed. 2014). As Black's Law Dictionary explains:

> The obligation of the constructive trustee is simply to turn the property over to the constructive beneficiary; the device does not create a "trust" in any usual sense of that word. The name of the remedy came about because early cases applying it involved trustees who wrongfully appropriated funds from trusts, making it convenient to say that they remained constructive trustees of whatever they had wrongfully acquired.

*Id.*

[5]  *Fields I*, 219 P.3d at 1002.

[6]  *Id.* at 1002, 1016.

The current appeal pertains to the proceedings arising out of Charles's petition to close the estate.[7]  In December 2012 the superior court ordered Charles to submit a final inventory of the estate.  The order required Charles to file "a proposed final inventory setting out in detail as per AS 13.16.365-375 all property of the estate at the time of the death of decedent and any property subsequently acquired by the estate."  The court also required Charles to file an updated petition for approval of accounting, final settlement and distribution, and closing of the estate.  The court stated that the updated petition "shall resolve all issues the Personal Representative believes should be fully resolved so that this estate can be fully closed and the Personal Representative discharged.  Any issue not raised by the Personal Representative in this pleading will be deemed waived or admitted."

Charles submitted his proposed final inventory of the estate in January 2013, stating that he was "relying on the Inventory and Appraisement previously filed with the Court on August 30, 1991."  This inventory did not include the Washington property.  In his reply to the siblings' objections to his filing, Charles again indicated that he had provided a full and accurate accounting of the estate and that "the Washington [p]roperty and the Trust itself are not properly a part of the remaining matters to be resolved in the Probate Court."  He further stated that "[t]he matters and business of the Trust are not at issue in the probate court."

---

[7]    Additional proceedings in this probate matter involved Fairbanks property that was administered as part of Fields's estate; reimbursement for taxes paid on the Washington property before it was conveyed to the trust, *In re Estate of Fields* (*Fields III*), No. S-15539, 2016 WL 1612877, at *1 (Alaska Apr. 20, 2016); Charles's actions as personal representative, *Fields I*, 219 P.3d at 1000; and the provision of adequate notice in certain proceedings, *Fields v. Fields* (*Fields II*), No. S-13851, 2012 WL 2477895 (Alaska June 27, 2012).  None of those proceedings are at issue in this appeal, except to the extent that Charles seeks reimbursement for attorney's fees incurred throughout the probate process.

A hearing to close the estate was held in November 2014.  In his opening statement before the standing master Charles reiterated that the superior court, in its order requiring a final petition for settlement and distribution of the estate, had been

> explicit that the court will not entertain any issues relating to the administration of the trust in this estate action.  Therefore, no evidence related to the trust should be heard with regards to the closing of this estate.  The final account, as submitted in 2007 and 2014, should be accepted by the court.

Charles testified at the hearing about the fees and expenses he sought to have reimbursed from the estate.  He stated that he had expended more than $100,000 defending the estate in legal proceedings.  At the close of the hearing the standing master asked the parties to submit their lists of issues for the court to resolve.  In this list Charles only mentioned the Washington property in connection with an unrelated issue.

In January 2015 Charles submitted records of his attorney's fees and costs.  The standing master noted that the appellate fees had not been separated from the trial fees, and she directed Charles to resubmit his fee and cost accounting "with respect to proceedings in front of the trial court only."  Charles resubmitted his accounting in April 2015 but did not clarify whether he had removed the appellate costs and fees as ordered.  The standing master calculated that Charles had requested $99,038.94 in attorney's fees and $6,166.93 in costs.  The siblings objected to approximately $79,500 of the requested fees and costs, leaving approximately $20,000 in uncontested attorney's fees.

The master found that, in light of the complex and long-term litigation surrounding the estate, "the amount of attorney's fees and costs is reasonable for the most part."  However, she found that certain actions had not been taken in good faith and therefore did not warrant attorney's fee reimbursement.  She also recommended that attorney's fees incurred on appeal not be awarded because the superior court could not

determine whether those fees were reasonable and necessary.[8] The standing master recommended denying reimbursement of $8,141 in bad-faith and appellate attorney's fees, "with a possible margin of error for other items of $10,000." Based on her calculations Charles was entitled to reimbursement of between $87,065 and $97,065 in attorney's fees and costs. She also determined that Charles's request for an additional $81,300 in administrative expenses was reasonable.

Relying on the estate inventory submitted by Charles, the standing master found that the estate had a value of $93,074. Factoring in the income from rents and property sold from the estate, the statutory exempt personal property allowance, specific devises, the $81,300 in valid administrative expenses, and the $20,000 in uncontested attorney's fees, the standing master concluded that either $9,763.65 or $17,563.65 remained in the estate.[9] Accordingly, either $9,763.65 or $17,563.65 was available to pay Charles's contested attorney's fees, which the standing master acknowledged "vastly exceed[ed]" either amount. She concluded that "[t]here will be no distributions to the Siblings from the estate as an intestate share of the assets [because] . . . after the approved costs and attorney fees, there are no assets to distribute."

After the standing master issued her findings, Charles's estate attorney filed a stipulation for limited entry of appearance to allow Charles's trust attorney to make objections to the standing master's findings. The superior court denied the stipulation, stating: "The [Washington property] trust is not a party to the probate case. The trust

---

[8]     The standing master concluded that appellate fees should "not be approved as payable from the estate only because this court cannot determine whether or not they are reasonable as this court did not preside over the appeal."

[9]     The $7,800 difference in the estate's valuation depended on whether rental income and fuel expenses for the estate's Fairbanks property were to be included in the calculation.

is free to move to intervene in the probate case and have the matter addressed in an orderly manner, but it cannot circumvent that deliberative process under the guise of a limited appearance." The trust did not move to intervene.

In October 2015 the superior court adopted the standing master's findings and ordered the estate to be closed. Charles now appeals the court's failure to include the Washington property in the value of the estate and the court's denial of reimbursement for attorney's fees incurred on appeal in prior proceedings.

## III. STANDARD OF REVIEW

Because Charles did not raise the issue of the Washington property below, we review the court's decision not to include the property in the estate for plain error.[10] "We will find plain error 'where an obvious mistake has been made which creates a high likelihood that injustice has resulted.' "[11]

Charles's claim for appellate attorney's fees is appropriately reviewed for abuse of discretion.[12] We will find an abuse of discretion "only if the award is 'manifestly unreasonable.' "[13]

We apply our independent judgment to questions of statutory interpretation; "we interpret the statute according to reason, practicality, and common sense,

---

[10] *Small v. Sayre*, 384 P.3d 785, 788 (Alaska 2016) (explaining that we review questions "not raised and properly preserved for review in the trial court" for plain error (quoting *Harvey v. Cook*, 172 P.3d 794, 802 n.46 (Alaska 2007)) (citing *D.J. v. P.C.*, 36 P.3d 663, 667-68 (Alaska 2001))).

[11] *Id.* (quoting *D.J.*, 36 P.3d at 668).

[12] *In re Estate of Johnson*, 119 P.3d 425, 430 (Alaska 2005) (citing *Helgason v. Merriman*, 36 P.3d 703, 705 (Alaska 2001)).

[13] *Foster v. Prof'l Guardian Servs. Corp.*, 258 P.3d 102, 107 (Alaska 2011) (quoting *DeNardo v. Cutler*, 167 P.3d 674, 677–78 (Alaska 2007)).

considering the meaning of the statute's language, its legislative history, and its purpose."[14]

## IV.  DISCUSSION

### A.  Charles Waived The Argument That The Court Erred In Excluding The Washington Property From The Estate.

Charles argues that the probate court erred in excluding the value of the trust containing the Washington property from its accounting of the estate.  However, he did not raise that issue in his statement of points on appeal, and we ordinarily "will not consider issues that are not included in the appellant's statement of points on appeal."[15] We may consider issues not raised in an appellant's statement of points on appeal when "the issue was raised at the trial and is adequately briefed on appeal and . . . opposing counsel are sufficiently apprised of the issue."[16]  Although Charles has briefed the issue fully and the siblings have responded, Charles did not raise the issue at trial.  To the contrary, he expressly disavowed this viewpoint throughout the proceedings.

Charles maintained a consistent position throughout the proceedings that the Washington property belonged to the trust and was therefore not subject to the probate proceedings.  In his February 2013 reply to the siblings' objections to his closing statement, Charles argued that the reimbursement of the trust was to be decided in a separate trust case, rather than in the estate case.  In his July 2014 opposition to the siblings' motion to compel production of accounting records and tax information for the trust, Charles asserted that "[t]he Fields Family Trust is not a part of this estate and the

---

[14]    *Adamson v. Municipality of Anchorage*, 333 P.3d 5, 11 (Alaska 2014) (citing *Grimm v. Wagoner*, 77 P.3d 423, 427 (Alaska 2003)).

[15]    *Mullen v. Christiansen*, 642 P.2d 1345, 1350 (Alaska 1982).

[16]    *Id.* (citing *Hootch v. Alaska State-Operated Sch. Sys.*, 536 P.2d 793, 808 n. 58 (Alaska 1975)).

Court has already held as such" and that the trust "is not even a party to this estate action." And he did not include the Washington property in the estate inventory he submitted to the standing master.

The siblings argue that Charles's consistent representations amount to intentional waiver of any argument that the Washington property should be included in the estate, such that he cannot prevail on a claim of clear error.[17] Charles counters that his failure to include the Washington property in the estate matter does not amount to affirmative waiver of the argument or "intentional relinquishment of a known right." He argues that, based on his understanding of the court orders, he "merely fail[ed] to object" to the omission of the Washington property from the estate. (Alteration in original.) However, in light of his own affirmative representations that the trust property was not subject to the probate proceedings, this argument is not convincing.[18] Furthermore, as trustee, Charles was on notice that the trust was not a party to the estate case, and he was provided with an opportunity to move to intervene. His failure to avail himself of that opportunity indicates that he made a strategic decision to waive any argument for recouping costs from the trust.

---

[17] *See Conley v. Alaska Commc'ns Sys. Holdings, Inc.*, 323 P.3d 1131, 1139 n.22 (Alaska 2014) ("To rise to the level of plain error, the error . . . cannot be the result of an intelligent waiver or a strategic decision not to object." (citing *Khan v. State*, 278 P.3d 893, 900 (Alaska 2012))).

[18] The siblings also argue that any error in omitting the Washington property from the estate was invited by Charles. "Invited error 'occurs when the court takes erroneous action at the express request of [a party], and then [that party] urges reversal on that basis on appeal.'" *Roderer v. Dash*, 233 P.3d 1101, 1114 (Alaska 2010) (alterations in original) (quoting *Barrett v. State*, 772 P.2d 559, 568 n.10 (Alaska App. 1989)). However, as we explain *infra* Section IV.B, the court did not err in excluding the Washington property from the estate.

**B.** **Even If Charles Had Not Waived The Argument, The Court Did Not Err In Excluding The Washington Property From The Estate.**

Charles argues that the exclusion of the Washington property from the estate resulted from a misapplication of the term "estate" as defined by Alaska's Uniform Probate Code. He asserts that the court in 2005 "ordered the [Washington] property returned to decedent's estate pursuant to a constructive trust order." Charles appears to conclude that, because the order imposing the constructive trust and directing him to establish the express trust for the Washington property was originally entered in the estate case, the Washington property remains part of the estate.

But Charles misunderstands the operation and effect of the constructive trust in *Fields I*. A constructive trust is not a trust in the ordinary sense of the word; it is an equitable remedy intended to convey property to "a claimant [who] has a better right to certain property than the person who has legal title to it."[19] Contrary to Charles's assertion, our decision upholding the constructive trust did not establish that the Washington property was part of the estate. Rather, we affirmed that the probate court had jurisdiction to impose a constructive trust over the Washington property and to order its transfer to an express trust, consistent with Fields's intent in conveying the property *inter vivos*.[20] Once the property was transferred from Fields's children to the express

---

[19]    *Constructive Trust*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[20]    *Fields I*, 219 P.3d 995, 1005-07 (Alaska 2009). The superior court's decision to impose the constructive trust in *Fields I* was based on AS 13.36.170(a). *Id.* at 1014-15. AS 13.36.170(a) provides in pertinent part:

> When an interest in real property is conveyed by deed to a person in a trust that is unenforceable under AS 09.25.010-09.25.020 and the intended trustee or the trustee's successor in interest holds title but refuses to carry out the trust because of AS 09.25.010-09.25.020, the

(continued...)

trust pursuant to the constructive trust order, it became the property of the trust, not the estate. The superior court therefore did not err in excluding the Washington property from the estate inventory.

## C. The Court's Decision Not To Reimburse Charles For Attorney's Fees Incurred On Appeal Was Not Prejudicial.

Alaska Statute 13.16.435 entitles an estate's personal representative to reasonable attorney's fees for "defend[ing] . . . any proceeding in good faith." Charles argues that the court erroneously excluded appellate work from AS 13.16.435's definition of "proceedings" when it declined to reimburse him for the attorney's fees he incurred on appeal to this court.[21] Citing to Black's Law Dictionary, he argues that the

---

[20]    (...continued)
intended trustee or the trustee's successor in interest . . . shall convey the interest in real property to the settlor or the settlor's successor in interest. A court having jurisdiction may prescribe the conditions for conveying the interest to the settlor or the settlor's successor in interest.

[21]    Charles also argues that he was entitled to recovery under AS 13.16.410(16) and (22), which provide:

Except as restricted or otherwise provided by the will or by an order in a formal proceeding and subject to the priorities stated in AS 13.16.540, a personal representative, acting reasonably for the benefit of the interested persons, may properly . . .

(16) borrow money with or without security to be repaid from the estate assets or otherwise; and advance money for the protection of the estate; . . . [and]

(22) prosecute or defend claims, or proceedings in any jurisdiction for the protection of the estate and of the personal representative in the performance of the personal representative's duties . . . .

(continued...)

common law definition of "proceeding" — which he argues is consistent with Alaska's Probate Code[22] — includes appellate work. He concludes that the probate court "denied [him] his statutory right for full reimbursement for good faith expenses incurred" defending the estate in *Fields I* and *Fields II*.

In *Enders v. Parker* we explained that "[t]he language of AS 13.16.435 is unambiguous. It states that a personal representative or nominated personal representative who has prosecuted or defended a probate action in good faith is entitled to recover all necessary expenses and disbursements, regardless of whether he or she prevailed in the action."[23] Nothing in the statutory language limits reimbursement to attorney's fees incurred in defending an action against an estate at the trial level.

Nonetheless, any abuse of discretion in declining to reimburse Charles for appellate attorney's fees was harmless. We will disregard any defect in a trial court's decision that did not prejudice the parties:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict

---

[21]    (...continued)
Charles appears to view AS 13.16.410(16) and (22) as alternate bases for the recovery of appellate attorney's fees. But those two provisions describe actions considered properly within the authority of an estate's personal representative; they do not provide for the reimbursement of expenses. The court properly analyzed Charles's claims according to AS 13.16.435, which is the provision authorizing reimbursement for actions taken pursuant to a personal representative's authority to defend the estate.

[22]    AS 01.10.010 provides that "[s]o much of the common law not inconsistent with the Constitution of the State of Alaska or the Constitution of the United States or with any law passed by the legislature of the State of Alaska is the rule of decision in this state."

[23]    66 P.3d 11, 14 (Alaska 2003) (footnote omitted).

or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.[24]

Charles has not been harmed by the court's denial of appellate attorney's fees.[25] As the siblings note, "the estate assets are insufficient to pay his existing administrative expenses, much less additional attorney's fees and costs." The estate does not contain enough value to reimburse even the attorney's fees that have already been awarded to Charles. The standing master determined that the estate contains a maximum value of $17,563.65, and Charles has been awarded at least $87,065 in attorney's fees.[26] Charles is already entitled to the entire remainder of the estate. No additional award can

---

[24]     Alaska R. Civ. P. 61.

[25]     The siblings also argue that Charles's "claim for relief is barred by his unclean hands." They point to findings of Charles's bad faith and contempt in Charles's dealings with a Fairbanks property belonging to the estate. But the doctrine of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith *relative to the matter in which he seeks relief.*" *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002) (emphasis added) (quoting *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)). It "does not constitute 'misconduct in the abstract, unrelated to the claim to which it is asserted as a defense.' " *Id.* (quoting *Republic Molding Corp. v. B.W. Photo Utils.*, 319 F.2d 347, 349 (9th Cir. 1 963)). Of the more than $87,000 in attorney's fees Charles has requested, approximately $209 are related to the Fairbanks property; the remaining fees relate to the subject matter of *Fields I* and *Fields II*. The standing master found that Charles had participated in *Fields I* and *Fields II* in good faith, and the siblings have not argued otherwise. The doctrine of unclean hands therefore does not apply to the vast majority of the disputed attorney's fees. Even if the doctrine is applicable to the litigation surrounding the Fairbanks property, it would not alter the court's calculations in any appreciable manner.

[26]     The fee award is above and beyond the $20,000 in uncontested attorney's fees and the $81,300 in administrative expenses.

increase the amount of money Charles is able to recover from the estate. Therefore any defect in the superior court's refusal to award Charles appellate attorney's fees was harmless.

## V.    CONCLUSION

Because the superior court properly excluded the Washington property from the estate inventory, and because any abuse of discretion in denying reimbursement for appellate attorney's fees did not prejudice Charles, we AFFIRM the superior court's decision.